UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARRYL DURR,

      Plaintiff,

-V-

      Case No.: 2:10-cv-312
      JUDGE SMITH
      Magistrate Judge Abel

OHIO ATTORNEY GENERAL
RICHARD CORDRAY, *et al.*,

      Defendants.

## OPINION AND ORDER

Plaintiff Darryl Durr, a state prisoner sentenced to death by the State of Ohio, has filed a civil rights action under 42 U.S.C. § 1983 asserting nine (9) claims for relief against Defendants Ohio Attorney General Richard Cordray, Ohio Governor Ted Strickland, Cuyahoga County Prosecutor Bill Mason, and Cuyahoga County Clerk of Court Gerald Fuerst and requesting temporary and permanent injunctive relief, as well as declaratory relief. The essence of Durr's suit is that the State of Ohio has denied him access to physical evidence for purposes of DNA testing that could, according to Durr, prove him to be innocent of the capital crime for which he has been convicted. Durr also argues that Ohio Revised Code § 2953.73(E)(1) is facially unconstitutional, because it creates a disparate system for appeals by capital as opposed to non-capital defendants. This matter is before the Court on Plaintiff Durr's Motion for Temporary Restraining Order and Preliminary Injunction seeking a stay of his execution currently scheduled for April 20, 2010 (Doc. 2). Defendants were permitted to file a responsive brief by April 14, 2010. However, Defendants filed a Motion to Dismiss Plaintiff's

Complaint for Lack of Jurisdiction and no Constitutional Claim (Doc. 13). Defendants did not

otherwise respond to the request for a temporary restraining order and preliminary injunction which

is currently before the Court. The Court held a hearing on Plaintiff's Motion on April 15, 2010.

Both sides were given the opportunity to present their arguments. For the reasons that follow, the

Court **TRANSFERS** the case to the United States Court of Appeals for the Sixth Circuit, and

alternatively, **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary

Injunction.

## I.    BACKGROUND

Plaintiff Darryl Durr is currently incarcerated in the Ohio State Penitentiary under a sentence

of death imposed by the Cuyahoga County Court of Common Pleas in 1988. On September 23,

1988, Durr was indicted for aggravated murder with three capital specifications and separate counts

of kidnapping, aggravated robbery and rape in the death of a 16 year old girl, Angel Vincent. Angel

Vincent had disappeared on or about January 31, 1988. There had been sightings of her about two

weeks after her disappearance by fellow students who knew her.

On April 30, 1988, a badly decomposed partially nude body was found in Brookside Park in

Cleveland, Ohio. An autopsy was performed. The body was not determined to be that of Angel

Vincent until early September 1988 when Deborah Mullins, the former girlfriend of Durr went to

the police and claimed that Durr told her he had killed Vincent.

Less than three months after Durr was indicted, he was convicted by a jury on all counts.

There was no physical evidence tying Durr to the charges. The prosecutor's case was totally

dependent on the testimony of Durr's former girlfriend and mother of his child, Deborah Mullins.

The jury recommended the death penalty and the trial court accepted.[1]

## II.    PROCEDURAL HISTORY

Following the conviction in the Cuyahoga County Court of Common Pleas, Plaintiff Durr appealed the conviction and sentence to the 8th District Court of Appeals, which was affirmed on December 7, 1989. *See State v. Durr*, No. CR-231670, 1989 WL147626 (Ohio Ct. App. Dec. 7, 1989). Durr then appealed the conviction and sentence to the Ohio Supreme Court, who also affirmed on March 20, 1991. *See State v. Durr*, 58 Ohio St. 3d 86, 568 N.E.2d 674 (1991).

Plaintiff Durr next sought post-conviction relief in state court, raising fifty claims. *See State v. Durr*, No. CR-231670 (Ohio Ct. Com. Pl. July 6, 1993). After the trial court denied his request, Durr appealed to the 8th District Court of Appeals, which affirmed the trial court. *See State v. Durr*, No. 65958, 1994 WL 463813 (Ohio Ct. App. Aug. 25, 1994). The Ohio Supreme Court denied Durr's request for further appeal. *See State v. Durr*, 644 N.E.2d 1028 (Ohio 1995). The 8th District Court of Appeals also denied his motion for delayed reconsideration, *State v. Durr*, No. 57140 (Ohio Ct. App. July 6, 1994), and the Ohio Supreme Court subsequently affirmed that decision. *State v. Durr*, 643 N.E.2d 1147 (Ohio 1994). Durr also filed two additional motions for reconsideration in the Ohio Supreme Court, both of which were denied. *See State v. Durr*, 647 N.E.2d 493 (Ohio 1995).

In June 1996, Plaintiff Durr filed a petition for writ of habeas corpus in the United States District Court for the Northern District of Ohio, Eastern Division, asserting fifty-one claims for relief. On November 2, 1999, the district court denied habeas relief as to all fifty-one claims. The

---

[1] The full details of the underlying case are not included as they have been fully set forth in the state appellate courts decisions and the Sixth Circuit's decision on Durr's habeas corpus petition.

Court granted a certificate of appealability as to three issues: (1) whether the district court correctly held that habeas claims forty-two (trial court's failure to appoint an independent psychologist), and fifty (ineffective assistance of counsel) were procedurally defaulted; (2) if not procedurally defaulted, whether these claims were properly denied on the merits; and (3) whether the evidence of rape was insufficient to support Durr's rape conviction.

On May 18, 2007, the Sixth Circuit Court of Appeals affirmed the Northern District decision. *See Durr v. Mitchell*, 487 F.3d 423 (6th Cir. 2007). A motion for rehearing was denied on September 7, 2007. Certiorari by the United States Supreme Court was denied on March 17, 2008. *See Durr v. Mitchell*, 552 U.S. 1261 (2008).

On August 6, 2009, Durr filed an application for DNA testing pursuant to Ohio Revised Code section 2953.71 *et seq.* before the Cuyahoga County Court of Common Pleas. Both parties agreed to test any DNA from oral, rectal and vaginal smears taken from the victim at the autopsy and the Court ordered the testing. The prosecutor objected to the DNA testing of the victim's necklace arguing it may have been contaminated and any results might be flawed. On September 23, 2009, the final report on the DNA testing of the smears found no DNA.[2]

The Court held an evidentiary hearing on the question of whether the victim's necklace should be subject to DNA testing. At the hearing, the Clerk of Courts testified that the necklace was in an envelope which could have been examined by others from the time it was put in storage as the envelope was not sealed. Dr. Linda Benzinger, a DNA Quality Assurance Administrator also testified for the state. Dr. Benzinger testified that "the quality of what would be on it, the chain that

---

[2] Plaintiff argued that there was no male DNA found on the smears, which is technically true, but it is argued in a way to cast doubt on Plaintiff's case, when in reality there was no DNA found at all.

was on the body of Angel Vincent which was somewhat decomposed and as such we wouldn't expect to find DNA that would have been applied during the offense. We wouldn't expect to find that on the chain because the bacteria and fungi from that decomposed body would have destroyed that DNA as well." (Tr. of hearing at 36). "It's telling that the vaginal, anal and oral samples, no DNA at all was obtained from those. We went ahead and tested for Y-STR's, but the quantity testing showed us that not even any DNA from the victim was obtained." (Tr. of hearing at 37). On October 16, 2009, the trial judge, Shirley Strickland Saffold, found that there is reason to believe that the evidence has been out of the State's custody and/or contaminated since its collection and therefore denied DNA testing of the necklace. Despite this ruling, Plaintiff Durr continues to argue that there is a possibility that testing the victim's necklace could produce usable results and that these results could exculpate him by inculpating a third party.

On November 20, 2009, Durr filed a Memorandum in Support of Jurisdiction in the Ohio Supreme Court seeking to have the Court declare that Ohio Revised Code § 2953.73(E)(1) is unconstitutional and that his constitutional rights were violated when the trial court denied his application for DNA testing.

Ohio Revised Code § 2953.73(E) provides:

(E) A judgment and order of a court entered under division (D) of this section is appealable only as provided in this division. If an eligible inmate submits an application for DNA testing under section 2953.73 of the Revised Code and the court of common pleas rejects the application under division (D) of this section, one of the following applies:

> (1) If the inmate was sentenced to death for the offense for which the inmate claims to be an eligible inmate and is requesting DNA testing, the inmate may seek leave of the supreme court to appeal the rejection to the supreme court. Courts of appeals do not have jurisdiction to review any rejection if the inmate was sentenced to death for the offense for which the inmate claims to be an eligible inmate and is requesting DNA testing.

    (2)  If the inmate was not sentenced to death for the offense for which the inmate claims to be an eligible inmate and is requesting DNA testing, the rejection is a final appealable order, and the inmate may appeal it to the court of appeals of the district in which is located that court of common pleas.

On April 5, 2010, the Ohio Supreme Court denied, without explanation, Durr's request. Plaintiff Durr then initiated this case on April 13, 2010, seeking a temporary restraining order and preliminary injunction.

Plaintiff asserts that Ohio Revised Code § 2953.73(E), which provides different rights for appeal of a denial of DNA testing depending on whether an inmate was sentenced to death or not, is unconstitutional and that the State has refused Plaintiff access to physical evidence that has never been tested for DNA in violation of his constitutional rights.  Plaintiff asserts claims for denial of due process, cruel and unusual punishment, ex post facto and retroactivity clause violations, equal protection, denial of access to the court, and violation of Article IV, Section 3(B)(2) of the Ohio Constitution.

## III.   STANDARD OF REVIEW

Rule 65(b) of the Federal Rules of Civil Procedure permits a party to seek injunctive relief to prevent immediate and irreparable injury.  A temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo.  The factors considered in granting a temporary restraining order or a preliminary injunction are similar in nature.  In the Sixth Circuit, it is well-settled that the following factors are to be considered in determining whether a temporary restraining order is necessary:

    (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the relief requested; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest will be served by issuance of the injunction.

-6-

*Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati*, 363 F.3d 427, 432 (6th Cir. 2004). The factors are not prerequisites; rather, they must be balanced. *Capobianco, D.C. v. Summers*, 377 F.3d 559, 561 (6th Cir. 2004); *see also Michigan Bell Tel. Co. v. Engler*, 257 F.3d 587, 592 (6th Cir. 2001) (no single factor is determinative.); *Monongahela Power Co. v. Schriber*, 322 F.Supp.2d 902, 918 (S.D. Ohio 2004).

The decision whether or not to issue a preliminary injunction falls within the sound discretion of the district court. *See Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Reg'l Transit Auth.*, 163 F.3d 341, 348 (6th Cir. 1998) (*citing Stenberg v. Checker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978)).

## IV.   DISCUSSION

As a preliminary matter, the Court must address the arguments raised by Defendants that the Court does not have jurisdiction over this action because it is essentially a successive habeas petition couched as a §1983 action. In the alternative, assuming that Plaintiff has adequately pled a §1983 action, the Court will address the merits of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction.

### A.   Jurisdiction

Before entertaining the merits of Durr's request for a temporary restraining order and preliminary injunction staying his execution, the Court must determine whether or to what extent it has jurisdiction. *See, e.g., American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) ("Subject matter jurisdiction is always a threshold determination.") (citing *Steel Co.*

-7-

*v. Citizens for a Better Env't*, 523 U.S. 83, 1010 (1998)).  This determination does not favor Durr,

for it compels the Court to find that Durr's claims are not properly asserted under 42 U.S.C. § 1983.

Rather, they sound in habeas corpus, an avenue of relief that Durr has already pursued and lost.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that the state

prisoner could not pursue an action for damages under 42 U.S.C. § 1983 for claims asserting

unlawful investigation and destruction of evidence because a favorable ruling would have called into

question the prisoner's underlying conviction and sentence, a result exclusive to habeas corpus

pursuant to 28 U.S.C. § 2254.  Subsequently, in *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005), the

Supreme Court carved an exception to Heck's preclusive effect, holding that state prisoners seeking

new hearings for parole eligibility could proceed in a civil rights action under § 1983 rather than

habeas corpus under 28 U.S.C. § 2254.  As the Sixth Circuit recently stated, "[u]nder Heck and its

progeny, a state prisoner cannot state a cognizable claim under sections 1983 or 1985 'if a ruling on

his claim would necessarily imply the invalidity of his conviction and confinement....'"  *Dotson v.

Lane*, No. 08-4384, 2010 WL 22326, at *2 (6th Cir. Jan. 5, 2010) (*quoting Lanier v. Bryant*, 332 F.3d

999, 1005-06 (6th Cir. 2003)).  In the context of whether a prisoner's challenge to the failure of the

state courts (or other state defendants) to allow him access to DNA testing, the Supreme Court

recently explicitly declined to address whether such a challenge should be brought as a § 1983 civil

rights action or a § 2254 habeas corpus action.  *District Attorney's Office for Third Judicial Dist. v.

Osborne*, 129 S.Ct. 2308, 2318-19 (2009).  The Sixth Circuit (albeit in an unpublished decision) and

several sister district courts have held, however, that such challenges sound in habeas corpus, not

§ 1983.  And this Court is reluctant to hold otherwise.

In *Boyle v. Mayer*, 46 F. App'x 340 (6th Cir. 2002), the Sixth Circuit addressed a district court's denial of a pro se litigant's 42 U.S.C. § 1983 action challenging the failure of the state prosecutor to cooperate with the prisoner's efforts to have DNA testing performed on a blood sample found in his house prior to trial. The prisoner argued that the state prosecutor had violated the prisoner's right to due process, subjected the prisoner to cruel and unusual punishment, and deprived the prisoner of his right to present evidence of his innocence. The Sixth Circuit affirmed the district court, holding that the prisoner's action was properly dismissed for the failure to state a cognizable claim in § 1983 because "[he] plainly challenged the validity of his criminal convictions and the fact or duration of his continued confinement." *Id.* at 340. The Sixth Circuit went on to state, "the district court properly found that the exclusive federal remedy for [the prisoner]'s claims was a writ of habeas corpus." *Id.* (*citing Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973)). *But see Alley v. Key*, 431 F. Supp. 2d 790, 795 (W.D. Tenn. 2006) (holding that § 1983 action alleging that the clerk of courts wrongfully refused to produce exonerating evidence was not the functional equivalent of a habeas corpus action because were the prisoner to prevail, his underlying conviction and sentence would have remained intact).

Recently, several sister district courts have fallen in line with *Boyle*, holding that challenges by a state prisoner to the refusal of the state courts to allow DNA testing do not state cognizable claims under 42 U.S.C. § 1983. In *Bonga v. Smith*, No. 10-cv-10013, 2010 WL 431717 (E.D. Mich. Feb. 2, 2010), the district court dismissed a state prisoner's § 1983 action for the failure to state a claim upon which relief could be granted. The prisoner had alleged denial of his due process and equal protection rights stemming from the refusal of the county prosecutor to conduct DNA testing on certain items of clothing. The district court explained:

-9-

Plaintiff's civil rights suit is subject to dismissal because, contrary to his assertion, in this civil rights action Plaintiff is essentially seeking to have his conviction vacated or set aside. Plaintiff's action does not state a cognizable claim under § 1983 because his request for DNA testing challenges the validity of his criminal conviction for which his exclusive remedy would be a writ of habeas corpus. Such claims are not properly brought in a § 1983 civil rights action. *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 838 (1994) (holding that a state prisoner does not state a cognizable civil rights claim challenging his conviction or imprisonment if a ruling on his claim would necessarily render his continued confinement invalid, until and unless the reason for his continued confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus). *See generally Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (finding that where a state prisoner is challenging the very fact or duration of his physical imprisonment and the relief that he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a petition for writ of habeas corpus). The United States Supreme Court has recognized "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" *Wilkinson v. Dotson*, 544 U.S. 74, 79, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (*quoting Preiser*, 411 U.S. at 487).

*Bonga*, 2010 WL 431717, at *2.

Prior to *Bonga*, the district court for the Southern District of Ohio, Western Division, reached a similar result in *Hayden v. Kiddone, et al.*, No. 3:05-cv-348, 2008 WL 471689 (S.D. Ohio Feb. 15, 2008). There, the district court addressed the prisoner's § 1983 action challenging the refusal of the state trial court to grant the prisoner's application for DNA testing. The district court dismissed the complaint for the failure to state a claim upon which relief could be granted, holding that the prisoner's complaint was barred by *Heck*. In so holding, the district court explained:

[T]he purpose of post-conviction DNA testing under Ohio law is to provide a mechanism by which a wrongfully convicted prisoner can utilize DNA evidence to obtain exoneration, in other words to challenge the validity of his conviction. Therefore, the Plaintiff is necessarily challenging the validity of his conviction by alleging that his request for DNA testing was not ruled upon fairly as a result of the Defendants withholding information from the trial court, since the purpose of such testing was to permit him to challenge the validity of his conviction.

*Hayden*, 2008 WL 471689, at *2. To this point, the district court went on to observe that although

the prisoner had not expressly challenged the validity of his conviction, "the thrust of Plaintiff's Complaint is that he sought DNA testing in order to establish that he was not guilty of the rape for which he had been convicted." *Id.* at fn2.

This Court agrees with *Boyle*, *Bonga*, and *Hayden* and concludes that Durr's challenges do not state a claim upon which relief can be granted under 42 U.S.C. § 1983. Although Durr has expressly disavowed that he is asserting either that he is actually innocent or that the state trial court committed error in denying his application for DNA testing of the victim's necklace, Durr cannot disavow the obvious: namely, that he is challenging the constitutional adequacy of Ohio's post-conviction DNA testing framework for no other reason than ultimately to seek to challenge his conviction and death sentence.

Having concluded that Durr's challenge arguably does not state a claim upon which relief may be granted under 42 U.S.C. § 1983, the Court is left to determine where Durr's challenge properly lies. The answer to that question is habeas corpus, which presents a problem of jurisdiction for this Court. Durr has already pursued and exhausted habeas corpus relief pursuant to 28 U.S.C. § 2254. Under 28 U.S.C. § 2244(b)(3)(A), before an applicant can file a second or successive petition for a writ of habeas corpus in the district court, the applicant must move in the appropriate circuit court of appeals for an order authorizing the district court to consider the application. Absent such an order, a district court does not have jurisdiction to entertain a successive habeas corpus petition. Where, as here, it appears that the applicant has not obtained such an order, a district court must transfer the matter to the appropriate circuit court. *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997) (*per curiam*). Under 28 U.S.C. § 2244(b)(3)(A), only a circuit court of appeals can authorize the filing of a successive habeas corpus petition.

-11-

Assuming that Durr's challenge lies in habeas corpus rather than § 1983, it constitutes a second or successive habeas corpus petition over which this Court is without jurisdiction absent authorization by the Sixth Circuit. It does not appear that Durr has obtained such authorization. The Sixth Circuit described the appropriate procedure for handling second or successive habeas corpus petitions filed in a district court without § 2244(b)(3)(A) authorization in *In re Sims* as follows:

> [W]hen a prisoner has sought §2244(b)(3)(A) permission from the district court, or when a second or successive petition for habeas corpus relief or §2255 motion is filed in the district court without §2244(b)(3) authorization from this court, the district court shall transfer the document to this court pursuant to 28 U.S.C. § 1631.

*In re Sims*, 111 F.3d at 47.

In view of the foregoing, the Court **TRANSFERS** the instant action to the Court of Appeals for the Sixth Circuit pursuant to 28 U.S.C. § 2244(b)(3)(A). This Court's action is not without precedence. *See, e.g., Spicer v. Janice*, No. 2:06-cv-11859, 2006 WL 1421322, at *2 (E.D. Mich. May 22, 2006) (construing a styled § 1983 action as a habeas corpus action and transferring the same to the court of appeals as an unauthorized successive habeas corpus action).[3]

In the alternative and out of an abundance of caution, assuming that Durr's challenge is properly before the Court under 42 U.S.C. § 1983, the Court will next consider whether Plaintiff is entitled to a temporary restraining order or preliminary injunction staying his execution scheduled for April 20, 2010.

---

[3]    The Court is mindful that the United States Supreme Court has before it a petition for a writ of certiorari in which it might squarely address whether claims challenging the adequacy of state postconviction DNA testing frameworks are properly brought in habeas corpus or pursuant to 42 U.S.C. § 1983. *Skinner v. Switzer*, No. 09-9000 (09A743). This Court need not await the Supreme Court's decision in *Skinner*, however, because this order will address in the alternative the merits of Durr's request for a temporary restraining order and preliminary injunction.

**B.      Temporary Restraining Order and/or Preliminary Injunction**

**1.      Likelihood of success on the merits**

Plaintiff Durr brings his claims under 42 U.S.C. § 1983, arguing that Ohio Revised Code §

2953.73(E) is unconstitutional and that the State has refused Plaintiff access to physical evidence that

has never been tested for DNA in violation of his constitutional rights.  Plaintiff asserts claims for

denial of due process, cruel and unusual punishment, ex post facto violations, retroactivity clause

violations, equal protection, denial of access to the court, violation of Article IV, Section 3(B)(2) of

the Ohio Constitution.

Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or
usage, of any State or Territory or the District of Columbia, subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured in an action at law, suit in
equity, or other proper proceeding for redress.

A § 1983 claim must satisfy two elements: "1) the deprivation of a right secured by the Constitution

or laws of the United States, and 2) the deprivation was caused by a person acting under color of

state law." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995).  Liability under § 1983 requires

the defendant's direct involvement in causing the alleged damages.  "Because vicarious liability is

inapplicable to . . . [section] 1983 suits, a plaintiff must prove that each Government-official

defendant, through the official's own individual actions, has violated the Constitution. *Ashcroft v.*

*Iqbal*, 129 S. Ct. 1937, 1948 (2009).

Although Plaintiff purports to raise nine distinct claims for relief, his claims essentially may

be broken into two categories: (1) the State has arbitrarily denied Plaintiff's liberty interest in access

to evidence that can prove his innocence in violation of his rights to due process and access to the

-13-

courts, and his right to be free from cruel and unusual punishment; and (2) Ohio's DNA testing laws violate Plaintiff's constitutional rights because it creates a disparity between capital and non-capital inmates. The Court will address all of Plaintiff's arguments in the context of the two aforementioned categories.

### 1.    State's denial of access to evidence

Plaintiff argues that the State has violated his due process rights by arbitrarily denying him his liberty interest in proving his innocence. Defendants argue, and the Court agrees, that Court is barred from conducting appellate review of the Cuyahoga County Common Pleas Court decision in accordance with the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) (the *Rooker-Feldman* doctrine generally bars federal district courts from reviewing state court decisions).

The *Rooker-Feldman* doctrine is designed to safeguard "our dual system of government from federal judicial erosion." *Squirek v. Law Offices of Sessoms & Rogers, P.A.*, 2003 U.S. Dist. LEXIS 7760 (M.D. N.C. May 5, 2003). It protects the state judicial systems by recognizing that the "independence of state courts would surely be compromised if every adverse decision in state court merely rang the opening bell for federal litigation of the same issues." *Id.*, *quoting Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000). Therefore, if a Plaintiff cannot succeed on a federal claim without requiring a district court to re-examine issues already decided by a state court, the district court cannot exercise subject matter jurisdiction.

The *Rooker-Feldman* doctrine originates from two Supreme Court decisions, which were rendered 60 years apart. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In both cases, the plaintiffs challenged the validity of

-14-

state court decisions by filing suit in federal district court. In *Rooker*, the plaintiff asked the district court to render the state court judgment against him "null and void." *See Rooker*, 263 U.S. at 414-15. In *Feldman*, the plaintiffs filed suit against the actual state court that had rejected the plaintiffs' applications to practice law. *Feldman*, 460 U.S. at 478-79. In both cases, the Supreme Court dismissed the suits for lack of subject-matter jurisdiction, reasoning that pursuant to 28 U.S.C. § 1257, only the Supreme Court, and not the lower federal courts, enjoys appellate jurisdiction over state court decisions. *See Rooker*, 263 U.S. at 414-15; *Feldman*, 460 U.S. at 478-79. Significantly, the *Feldman* Court reasoned that the plaintiffs could challenge the state rules themselves in federal court on constitutional grounds; such a challenge would not be asking the district court to exercise appellate authority over a state court, but normal preclusion rules would still apply. *Id.* at 487-88; *see also Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 435-36 (6th Cir 2006) (discussing the Supreme Court's analysis in the *Rooker* and *Feldman* cases more extensively). The source of the plaintiffs' alleged injury, then, was dispositive in *Feldman* on the issue of jurisdiction, a distinction which the Supreme Court reiterated more than 20 years later in *Exxon Mobil*, 544 U.S. 280.

Whether the *Rooker-Feldman* doctrine applies involves a two-part inquiry. First, the Court considers whether the federal claim is "inextricably intertwined" with the claim asserted in the earlier state court action. A claim is "inextricably intertwined" if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 756 (6th Cir. 2003), *quoting Catz v. Chalker*, 142 F.3d 279, 293 (6th Cir. 1998). Second, the Court considers "whether the federal claim

-15-

is a 'general challenge to the constitutionality of the state law applied in the state action,' to which the *Rooker-Feldman* doctrine would not apply, or 'a specific grievance that the law was invalidly--even unconstitutionally--applied in the plaintiff's particular case,' that would raise a *Rooker-Feldman* bar." *Id.*

In reviewing Plaintiff's Complaint, the Court finds that Plaintiff's first category of claims against the state are based on the denial of DNA testing. The source of injury in this case, like that discussed *In Re Smith*, 349 Fed. Appx. 12, 2009 WL 3049202 (6th Cir. 2009), is that the state trial court denied Plaintiff access to DNA testing of the victim's necklace.[4] The Sixth Circuit held that "Smith is complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment, which is clearly barred by *Rooker-Feldman. Id.* at \*15.

Even if Plaintiff's claims against the State present an independent basis for the exercise of federal review and to the extent Plaintiff is arguing that he has a constitutional right to DNA testing, his claims still fail because as the United States Supreme Court set forth in *District Attorney's Office v. Osborne*, 129 S. Ct. 2308, 2322 (2009), there is no freestanding substantive due process right to DNA testing. Furthermore, to the extent Plaintiff's arguments attempt to avoid the previous two arguments, he is then arguing that there is a disparity in Ohio Revised Code §2953.73(E), which will be addressed in the following section.

## 2.    Ohio's DNA laws

Plaintiff argues that Ohio Revised Code § 2953.73(E) violates his equal protection rights under the Fourteenth Amendment to the United States Constitution, the Eighth Amendment right

---

[4] Plaintiff's request for DNA testing was granted in part in that the swabs taken from the victim were tested.

to be free from cruel and unusual punishment, the ex post facto and retroactivity clauses, the Ohio Constitution, substantive due process rights, and that it is unconstitutional as applied to him. The Court will address Plaintiff's likelihood of success on the merits of each of the aforementioned claims.

          *a.*    *Equal Protection*

Section 1 of the Fourteenth Amendment provides, in pertinent part: "No State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. Amend. XIV, § 1. To establish a violation of the Equal Protection Clause, it must first be shown that the defendant's actions result in similarly-situated individuals receiving disparate treatment. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Gillard v. Norris*, 857 F.2d 1095, 1100 (6th Cir. 1988). If it is shown that similarly-situated persons receive disparate treatment, and if that disparate treatment invades a "fundamental right" such as speech or religious freedom, then the strict scrutiny standard governs and the defendant's actions will be sustained only where they are narrowly tailored to serve a compelling government interest. *See Reno v. Flores*, 507 U.S. 292, 302 (1993); *37712, Inc. v. Ohio Dept. of Liquor Control*, 113 F.3d 614, 621 (6th Cir. 1997).

Plaintiff argues that inmates who have been sentenced to death are not provided the same rights as inmates who have not been sentenced to death. Non-capital defendants who seek DNA testing are entitled to an appeal of right to the Ohio court of appeals, whereas capital defendants "may seek leave" of the Ohio Supreme Court to appeal the denial of their DNA applications. *See* Ohio Rev. Code § 2953.73(E). Plaintiff is therefore arguing his equal protection rights are violated because he has been subjected to disparate treatment with respect to his fundamental right of court

-17-

access.

During the hearing on this matter, Plaintiff failed to produce any argument or evidence, beyond the obvious that the motion in support of jurisdiction is not fully briefed and there is not a full record before the court, that Ohio Revised Code § 2953.73(E) truly has a disparate impact. All Plaintiff provided was unsupported and unsubstantiated speculation. On its face, the statute provides for two different appellate procedures, but in reality, all defendants have the opportunity to seek review of a post-conviction application for DNA evidence. Plaintiff argues that the Ohio Supreme Court rarely grants discretionary review and indeed denied Plaintiff Durr's appeal in this case on April 5, 2010, denying him any appeal of his DNA application. However, Plaintiff could not definitively deny that the Ohio Supreme Court provided an adequate review of his application for appellate review.

While this discretionary appeal of post-conviction DNA applications has not previously been challenged, the Court looks to *Smith v. Mitchell*, 567 F.3d 246 (6th Cir. 2009), for guidance with respect to a challenge to the State's one-tier system of appellate review of capital cases in general. In *Smith*, the capital defendant argued that the one-tier system of direct appellate review of capital cases was unconstitutional because it treated noncapital defendants more favorably than capital defendants with no rational basis for the disparate treatment. The Ohio Supreme Court applied rational-basis review to Smith's claim, following the standard in *Estelle v. Dorrough*, 420 U.S. 534, 539, 95 S. Ct. 1173, 43 L. Ed. 2d 377 (1975). The Sixth Circuit, citing the Ohio Supreme Court, explained that the rationale for treating capital defendants differently than noncapital defendants was not contrary to or an unreasonable application of clearly established federal law. *Smith*, 567 F.3d at 262.

-18-

Plaintiff has therefore failed to establish actual disparate treatment with respect to the fundamental right to court access. Even if he had, the one-tier system of appellate review has been upheld as constitutional in the context of direct appeals, and it follows that a discretionary one-tier appeal is sufficient for post-conviction appeals. Further, there is a rational basis for expediting review to Ohio Supreme Court, which would have the final say regardless if there was an appeal as of right to the appellate court.

Although *Smith* was decided under stringent habeas corpus standards of review, it nonetheless provides a basis for finding that Plaintiff has no strong or substantial likelihood of success on the merits of his equal protection claim. Beyond offering unsubstantiated speculation as to the cursory nature of the Ohio Supreme Court's review process, he failed to sustain his burden of proving that the different treatment of non-capital versus capital defendants has a truly disparate impact.

> b.    *Eighth Amendment*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. The death penalty has never been held to be per se cruel and unusual punishment, however, it must not be imposed arbitrarily or capriciously. *See Furman v. Georgia*, 408 U.S. 238 (1972). Meaningful appellate review is essential in guaranteeing that the death penalty is not imposed arbitrarily, capriciously, or irrationally. *See Parker v. Dugger*, 498 U.S. 308, 321 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 749 (1990); *Gregg v. Georgia*, 428 U.S. 153, 195 (1976). However, the United States Supreme Court has held that there is no constitutional right to appellate review. *See Estelle v. Dorrough*, 420 U.S. 534, 536 (1975); *see also Lopez v. Wilson*, 426 F.3d 339, 353 (6th Cir. 2005). It is wholly within the discretion of the state to allow or not to allow such a

-19-

review. *See Goodwin v. Cardwell*, 432 F.2d 521, 525 (6th Cir. 1970). However, a state that has provided a process of appellate review must do so consistent with the requirements of due process and equal protection. *Griffin v. Illinois*, 351 U.S. 12, 18 (1956); *Freels v. Hills*, 843 F.2d 958, 959 (6th Cir. 1988).

Plaintiff argues that his Eighth Amendment rights are violated because evidence exists to prove his innocence. Plaintiff asserts that he has been denied DNA testing on the victim's necklace and that if permitted to conduct such testing, it could prove his innocence. Plaintiff alleges that a "grievous error" was committed by the Ohio Legislature "in failing to provide an appeal of right for capital inmate. Eliminating the appellate courts, and denying any mandatory appeal, from the review process increases the risk of arbitrary and capricious imposition of the state's most extreme sanction." (Pl. Mot. at 18).

The *Smith* Court was faced with an Eighth Amendment challenge that Ohio's one-tier system of direct appellate review does not provide for "meaningful appellate review," leading to the imposition of the death penalty in an arbitrary and capricious manner. *Smith*, 567 F.3d at 263. The *Smith* Court recognized that the United States Supreme Court has allowed states substantial leeway in implementing procedures to assure that the death penalty is not imposed arbitrarily or capriciously, refusing "to say that there is any one right way for a State to set up its capital sentencing scheme." *Spaziano v. Florida*, 468 U.S. 447, 464 (1984). The Sixth Circuit upheld the Ohio Supreme Court's holding rejecting Smith's arguments that Ohio's scheme does not provide for meaningful adequate review for appropriateness and proportionality, noting that the Ohio Supreme Court "can more readily judge both the appropriateness and proportionality of death sentences on a statewide basis, instead of the geographical limits of an appellate district." *Smith v. State*, 80 Ohio St. 3d 89, 684

-20-

N.E.2d 668, 683 (Ohio 1997).

Based on the same reasoning applied in *Smith*, this Court finds that allowing Plaintiff the option of a discretionary appeal of his denial of DNA testing to the Ohio Supreme Court allows for meaningful and adequate review and therefore Plaintiff has not demonstrated a likelihood of success on the merits of his claim for violation of his Eighth Amendment rights.

> c.    *Substantive Due Process*

Plaintiff's substantive due process argument is similar to those asserted with respect to his Equal Protection and Eighth Amendment claims.  Plaintiff asserts that he has "a substantive right to obtain DNA evidence that can prove his innocence." (Pl.'s Mot. at 19).

The *Smith* Court was faced with a due process argument similar to Plaintiff's argument here. The *Smith* Court concluded that review directly to the state supreme court has advantages over review only to the intermediate state appellate court.  The Ohio Supreme Court explained:

> [A] single-tier system does not violate the capital defendant's right to due process. A direct appeal to this court affords a capital defendant significant advantages in comparison with other criminal defendants. As stated, all of a defendant's issues, both noncapital and capital, constitutional or statutory, are reviewed by the Supreme Court. A court of appeals must apply this court's existing precedents, but this court can directly reverse its own precedents.  A defendant can still directly challenge existing precedent and seek change.  Indeed, his or her opportunities are better, as a lower court could not reexamine precedent from the Supreme Court.
>
> Further, this court can more readily judge both the appropriateness and proportionality of death sentences on a statewide basis, instead of the geographical limits of an appellate district. An appellate court does not have the breadth and scope of experience that this court has to review the death sentences of all eighty-eight counties and to measure the appropriateness and proportionality of all cases in the state.

*Smith*, 684 N.E.2d at 683 (citations omitted).  The Sixth Circuit further concluded that "the fact that capital defendants were afforded greater rights before the amendment does not mean that the lesser

rights they now have are less than the Due Process Clause requires." *Smith*, 567 F.3d at 263.

Based on the reasoning in *Smith* as set forth above, the Court finds that Plaintiff does not have a likelihood of success on his claim for violation of his substantive due process rights. Plaintiff had the option to file a discretionary appeal of his denial for DNA testing with the Ohio Supreme Court and he in fact did.

### d. Ex post facto and Retroactivity

Durr's third and fourth claims for relief, although somewhat difficult to discern, appear to allege violations of the Ex Post Facto and Retroactivity Clauses. Specifically, Durr suggests that at the time of his conviction, in 1988, capital offenders were afforded an appeal of right to the intermediate court of appeals on postconviction relief claims, but that following passage of "Issue 1" in Ohio 1994, "the state imposed an *ex post facto* law on Mr. Durr in violation of Article I, Section 10 of the United States Constitution" (Compl. ¶ 44) and "a retroactive provision in violation of Article I, Section 10 of the Ohio Constitution." (Compl. ¶ 46).

The Court cannot find that Durr demonstrates any (much less a strong or substantial) likelihood of success on the merits on these claims for relief. As the Supreme Court has stated, "Article I of the United States Constitution provides that neither Congress nor any State shall pass any 'ex post facto law.'" *Miller v. Florida*, 482 U.S. 423, 429 (1987). The Supreme Court has clarified that there is no ex post facto violation where a change in the law does not increase punishment, or change the ingredients of an offense or the ultimate facts necessary to establish guilt. *Id.* at 433; *see also Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977). The Supreme Court has also explained that the Clause targets laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43 (1990). In *Collins v.*

-22-

*Youngblood*, the Supreme Court found no ex post facto violation from the passage of a statute permitting an appellate court to reform a verdict that would have been void at the time it was rendered. *Id.* at 52.

In view of these parameters, Durr has not established, and it is not otherwise apparent to the Court, how Ohio Revised Code § 2953.73(E)(1), to the extent that it requires capital defendants to appeal any trial court's denial of an application for DNA testing directly to the Ohio Supreme Court by way of a memorandum in support of discretionary jurisdiction, constitutes "an ex post facto law" or "imposes a retroactive provision." That procedural provision does not under any definition increase Durr's punishment, or change the ingredients of the offense for which he was convicted and sentenced to death or the ultimate facts necessary to establish guilt. Nor does it reach back to create new burdens, new duties, new obligations, or new liabilities that did not exist at the time the statute became effective. *Cf. Rhoads v. Welch*, No. 3:09-cv-814, 2009 WL 3600330, at \*9 (N.D. Ohio Oct. 27, 2009) (citations omitted). It bears reminding that notwithstanding whatever appeal of right to the intermediate court of appeals generally on postconviction relief claims to which Durr was entitled in 1988 at the time of his conviction, what he did not possess at that time was the comprehensive statutory right to postconviction DNA testing that Ohio now provides. It thus tests the limits of credulity to suggest that any part of that statutory framework that constitutes "an ex post facto law" or "a retroactive provision." Because Durr has failed to demonstrate a strong or substantial likelihood of success on the merits of this third and fourth claims for relief, he is not entitled to a temporary restraining order or preliminary injunction in connection with those claims.

*e.     Divestment of jurisdiction*

Plaintiff argues that when the Ohio Legislature enacted Ohio Revised Code § 2953.73, it stripped the Ohio courts of appeals of jurisdiction to review a capital offender's DNA appeal in violation of the Ohio State Constitution, Article IV, §3(B)(2), conferring jurisdiction on the courts of appeal. Plaintiff argues that the Legislature does not have authority to unilaterally amend the Ohio Constitution and accordingly Ohio Revised Code § 2953.73 is unconstitutional and void. Plaintiff relies on *Cincinnati Polyclinic v. Balch*, 92 Ohio St. 415, 418-19 (1915), which held that "the legislature . . . cannot add to or take from the appellate jurisdiction of the courts of appeals now conferred by the constitution."

The Ohio Constitution has been amended several times since *Cincinnati Polyclinic* was decided, and the Ohio Supreme Court's position on the legislature's ability to define appellate jurisdiction has changed significantly. In 1945, the a change in the jurisdiction language became effective. A case came before the Ohio Supreme Court a year later that asked the Court to determine the impact of the new changes. *See Youngstown Municipal Ry. Co. v. Youngstown*, 147 Ohio St. 221, 222-23 (1946). The Court wrote that "[t]he expressed intention is to accomplish the simple result of empowering the General Assembly to change the appellate jurisdiction of the Courts of Appeals if it should desire so to do; and unless and until there is such legislative action, the appellate jurisdiction of the Courts of Appeals remains as it was at the time the amendment was adopted." *Id* at 223. By 1982, the Ohio Supreme Court noted that "[s]imilar wording ["as may be provided by law"] of Section 3(B)(2) of Article IV of the Ohio Constitution, pertaining to the Courts of Appeals, has been construed as empowering the General Assembly to change the appellate jurisdiction of the Courts of Appeals." *Morgan v. Western Electric Co.*, 69 Ohio St. 2d 278, 291 fn. 11 (1982) (internal

-24-

citations omitted).

Accordingly, Plaintiff's argument that the Ohio Legislature's enactment of Ohio Revised Code § 2953.73, is a violation of the Ohio Constitution is unfounded and Plaintiff has not shown a substantial likelihood of success on the merits.

> f.     *Unconstitutional as applied*

Plaintiff argues that Ohio Revised Code § 2953.73(E) is unconstitutional as it has been applied to him because he is an eligible inmate as set forth in Ohio Revised Code § 2953.74 and therefore is entitled to have the victim's necklace tested for DNA. For the same reasons Plaintiff has failed to demonstrate a likelihood of success on the merits with respect to his equal protection, Eighth Amendment and Due Process claims, Plaintiff has failed to demonstrate a likelihood of success on the merits of his claims that Ohio Revised Code § 2953.73(E) is unconstitutional as applied.

Having reviewed and rejected each of Plaintiff's arguments, the Court concludes that Plaintiff is not likely to succeed on the merits of his claims.

**B.     Irreparable harm**

Plaintiff argues and the Court agrees that the failure to grant a temporary restraining order and preliminary injunction would cause him irreparable harm. Plaintiff Durr is scheduled to be executed on April 20, 2010.

**C.     Harm to others**

Plaintiff argues that allowing him the opportunity to defend his constitutional rights will not result in harm to others. While the protection of constitutional rights is always a public interest, there has been no violation of constitutional rights here. Further, the State is harmed when execution

of valid criminal judgments is delayed without just cause.

**D.    Public interest**

Plaintiff argues that "the public has an interest in the equitable administration of justice and faith in the criminal justice system. DNA testing has played a positive role in the recent past in enhancing the certainty that the public feels in decisions by the State to sentence an individual to death. Allowing Mr. Durr to test all relevant evidence in his case, as required by the federal and Ohio constitutions, promotes the public's interest." (Pl.'s Mot. at 32). The Court finds that in this case the public interest is best served by deferring to Defendants' efforts to ensure the integrity of the criminal justice system because Plaintiff has not carried his burden of demonstrating constitutional inadequacies in Ohio's DNA testing law.

Examining and balancing the four preliminary and permanent injunction factors together, the Court concludes that the issuance of a temporary restraining order and preliminary injunction is not warranted in this instance.

## V.   CONCLUSION

Based on the foregoing reasons, the Court **TRANSFERS** the case to the United States Court of Appeals for the Sixth Circuit, and alternatively, **DENIES** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

The Clerk shall remove Documents 2 and 13 from the Court's pending motions list and this case shall be immediately transferred to the Sixth Circuit for consideration of Plaintiff's successive habeas petition.

**IT IS SO ORDERED.**

**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**